J. Gordon Flannery, J.
The complaint in this action rests upon an agreement made June 12, 1941, between the plaintiff Edward G. Kennedy, individually, and as administrator of his father, Joseph T. Kennedy, Sr., and the defendant Joseph T. Kennedy, Jr. The agreement was executed at the culmination of negotiations between Edward, as administrator, and Joseph, Jr., individually, after the death of their father, Joseph T. Kennedy, Sr., when it was discovered that only three of the authorized 100 shares of the common stock of the defendant Joseph T. Kennedy Funeral Chapel, Inc., had ever been issued and that those three had been issued in the name of Joseph T. Kennedy, Jr., and were claimed by him as his sole property. One of the ‘ ‘ Whereas ’ ’ clauses introducing the agreement recites that Joseph T. Kennedy, Sr., had died intestate January 31, 1940, leaving eight children, Joseph T. Jr., Edward G., Margaret L., James T., Loretta M., Lester, Florence and Mildred, of whom Joseph and Edward, the parties to the agreement, were 23 and 21 years old respectively, and the others all minors, the oldest, Margaret, 20 years old, and the youngest, Mildred, 13.
The opening paragraph of the agreement, after the series of “ Whereases ”, says that it is made between Joseph T. Kennedy, Jr., “ herein called the First Party ’ ’ and ‘1 Edward G. Kennedy, as Administrator aforesaid, and for the benefit of the heirs of said Joseph T. Kennedy, Sr., herein called the Second Party ” and recites that “ the parties hereto, in consideration of the mutual covenants and conditions hereinafter contained, do promise and agree as follows: ” The first numbered paragraph recites that the first party declares himself to be trustee “ of the outstanding and issued capital stock of the said Joseph T. Kennedy Funeral Chapel, Inc.,” for the benefit of the heirs and next of kin of Joseph T. Kennedy, Sr., and the second provides *926 that upon the execution of the agreement “ the said stock shall be re-issued as follows: ”
“ To:
“ Joseph T. Kennedy, Jr.— 51% of the outstanding stock
“ Edward G-. Kennedy — 7% of the outstanding stock — General Guardian of Margaret
“ L. Sampson — 7% of the outstanding stock
“Joseph T. Kennedy, Jr.— As Trustee for Loretta M. Kennedy, 7% of the outstanding stock
“ Joseph T. Kennedy, Jr.— As Trustee for James T. Kennedy, 7% of the outstanding stock
“ Joseph T. Kennedy, Jr.— As Trustee for Lester Kennedy, 7% of the outstanding stock
“ Joseph T. Kennedy, Jr.— As Trustee of Florence Kennedy, 7% of the outstanding stock
“ Joseph T. Kennedy, Jr.— As Trustee for Mildred Kennedy, 7% of the outstanding stock
< < There shall be endorsed upon the certificates of stock issued as herein provided, a provision to the effect that they are subject to the terms and conditions of this agreement. ’ ’
There follow provisions for the holding of the stock as trustee by Joseph during the respective minorities of the infants, and for the passing thereof to the legal representative of any who should die an infant. It is further provided that the certificates shall be nonassignable ‘ ‘ without the consent of all the parties hereto first given in writing ’ ’ and detailed provision is made for the purchase by the surviving heirs, from the legal representative of any who should die, of the shares of the deceased at the book value thereof at the time and for arbitration if there should be lack of agreement. Joseph T. Kennedy, Jr., binds himself upon demand to prepare and deliver to Edward “ an account of the affairs of the said corporation from and since the date of death of the said Joseph T. Kennedy, Sr., and from and after the date hereof, as required ”. Provision for the election of directors is made and those designated who should be elected. Joseph is designated to continue as manager of the corporation, meaning, of course, the business of the corporation, at $75 per week and business expenses and authority is given him to check out the funds of the corporation for its conduct and expenses by corporate checks signed by him alone. Provision for books of account and inspection thereof is made, and it is then provided as follows:
£ £ 11. The said corporation shall advance for the maintenance and support of the infant beneficiaries herein named, except the infant, Margaret L. Sampson, weekly the sum of $50 and *927 any said sum so advanced shall be charged against the respective interests of the said infants in equal parts on an accounting to be had as each of said infants shall respectively arrive at the age of twenty-one years.
“ 12. Upon the said infants all having reached the age of twenty-one years, the stock so held by said First Party, as trustee, shall be distributed to the said beneficiaries, or their legal representatives, in accordance with their respective rights herein. ’ ’
Further provision is made for dividends and for charging against dividends declared on the stock of any infant beneficiary any sums advanced for his or her maintenance and support under the provisions of paragraph 11th. The instrument is declared to be binding “upon the parties hereto, their legal representatives, successors and assigns ” and is signed and sealed by Joseph and Edward individually.
The complaint alleges the majority of all the former minors and that the defendant Joseph T. Kennedy, Jr., “has failed and neglected to perform any of the conditions of said agreement on his part to be performed ’ ’ despite full performance by Edward U. Kennedy, as administrator. It is also alleged that the corporate defendant “through the defendant, Joseph T. Kennedy, Jr., as officer, director and managing agent thereof, had knowledge of the aforesaid agreement and of the failure of the defendant, Joseph T. Kennedy, Jr., to perform any of the conditions thereof on his part to be performed either individually, or through the instrumentality of said defendant corporation.” It is alleged that the plaintiffs have no adequate remedy at law and judgment is demanded that Joseph specifically perform, that he deliver and assign their shares of stock to each of the plaintiffs, that the corporate defendant be required to pay the proportionate shares of the $50 per week that Joseph agreed it would advance for Loretta, Florence and Mildred and that the defendants be required to give a full and just account of the income, expenses and earnings. The two brothers, James T. Kennedy and Lester Kennedy, who were among the minors for whose benefit the agreement was made, do not join in the complaint nor are they made defendants, and the court is uninformed of their attitude or desires.
Edward, individually, and as administrator joins with Margaret, Loretta, Florence and Mildred as plaintiffs in the action. The defendants on the trial moved to dismiss the complaint upon the ground that there was a misjoinder of parties in that Edward had no capacity to sue as administrator and neither he, as beneficiary, nor the other plaintiffs were parties to the *928 contract. However, the court believes that as administrator he had power to settle or compromise the claim of the estate of his father against Joseph T. Kennedy, Jr., for the stock of the corporation (Matter of Leopold, 259 N. Y. 274, 276), and his act could be set aside by the heirs at law, next of kin and distributees only upon proof of bad faith or fraud. (Scully v. McGrath, 201 N. Y. 61, 64.) As administrator, then, he is a promisee who has given a substantial consideration for a promise for the benefit of third parties and he may maintain an action in equity to enforce the contract that he made. (Civ. Prac. Act, § 210; Croker v. New York Trust Co., 245 N. Y. 17, 19-20.) Further, as administrator, he owed a duty to the distributees of the intestate to collect all the assets and property that had been of Joseph T. Kennedy, Sr., to pay the debts, to account for his acts to the same distributees and to pay over or deliver to them their distributive shares. (Noll v. Smith, 250 App. Div. 453, 455; Matter of Kohler, 231 N. Y. 353, 365; Matter of Sullivan, 177 Misc. 570, 572.) All these persons who appear in their own right as plaintiffs here, then, are persons to whom he, as administrator and promisee, owed a legal duty or liability which was met or fulfilled by the negotiation and execution of the contract by him as administrator. (Vrooman v. Turner, 69 N. Y., 280, 285.) However, the court is inclined to interpret his execution of the contract as made in both his official and personal capacity, and as the brother of the other plaintiffs, he, as an individual* also owed a moral duty to these minor dependent sisters and brothers that was certainly as great as the duty owed by the wife to her dependent niece in Seaver v. Ransom (224 N. Y. 233) and the language of the court in that case at the bottom of page 241 is applicable: ‘ ‘ The equities are with the plaintiff, and they may be enforced in this action, whether it be regarded as an action for damages or an action for specific performance to convert the defendants into trustees for plaintiff’s benefit under the agreement.”
The individual plaintiffs are, thus, in the opinion of the court, in at least two of the classes of third-party beneficiaries who may sue and recover, namely, the class of those with a legal right to adopt and claim the promise as made for their benefit because of some legal obligation of the promisee to them and, second, those to whom the promisee owed some natural and moral duty of nurture or care. The defendants also asserted that the two brothers, Lester and James, were necessary parties, either as plaintiffs or defendants and should have been made defendants if they refused to join as plaintiffs in the action and that no complete determination of the litigation or the rights of *929 the parties under the agreement was possible unless all were before the court. Care in the preparation and commencement of this action would have brought this about. It would, undoubtedly, have been better if these two third-party beneficiaries of the contract had been made parties to the action. As the court has signified above, however, the administrator represents them in this litigation and must take his risk of their dissatisfaction later if it should appear that, after eight years of inaction and omission to protest what he has done, they, on his accounting or otherwise, object to his action. (Matter of Leopold, supra; Murray v. Blatchford, 1 Wend. 583, 622.)
Both defendants appear by the same attorney, deny that Edward has fully performed the conditions on his part to be performed and that Joseph has failed and neglected to perform his, and that the corporate defendant has failed to perform its obligation. The answer also denies that portion of the complaint that alleges that Edward and Margaret have been deprived of the benefit of ownership of the shares of stock to which they were entitled and that Loretta, Florence and Mildred have been deprived during their minority of their beneficial interest and of the benefits of ownership since their attainment of their majorities and have been further deprived of their proportionate share of the $50 to be advanced for the support and maintenance of the infants. The answer then sets forth a first, separate and complete defense of an alleged subsequent contract dated July 22, 1942, wherein Edward and Margaret for themselves, and Margaret for the three minor girls, Mildred, Florence and Loretta would have attempted to surrender all their rig’hts and those of the three minor girls in the first agreement for a total payment of $6,000 to be made in installments of $2,500 at execution, and $500 a month thereafter. This was defendants’ Exhibit A and apparently, with four checks, defendants ’ Exhibits B, C, D and E showing payments to Jacob J. Kramer, attorney, by Benjamin D. Kaplan of $1,660, constituted the only evidence offered by the defendants on the trial. This agreement, however, was apparently never executed. There is nothing to indicate that Joseph T. Kennedy, Jr., or Margaret Sampson in any capacity whatever ever executed it and, although the signature of Edward G-. Kennedy was apparently written in the place for his signature, it is stricken out with lighter ink and no one can question that he thus withdrew his signature before execution by any other. It also bears the notation in what apparently is not the script of Joseph T. Kennedy, Jr., “Not signed by Jos. Kennedy.” A second, separate defense merely realleges the paragraphs of the first *930 and pleads the six-year Statute of Limitations and would, consequently, fall with the first. The third separate defense is the allegation that the plaintiffs have a full, adequate and complete remedy at law, which, of course, is not the fact.
The plaintiffs deny the execution or validity of the alleged agreement of July 22, 1942, and the only proof the defendants offer of its execution is the copy offered as defendants’ Exhibit A, and the four checks. The only possible relation the checks have to the agreement as well as can be determined from anything written on them is that they are all dated subsequent to August 1, 1942, when the- installments of $500 each were to commence and are respectively dated and for the amounts as follows:
8/5/42 .............................. $500.
2/3/43 .............................. 500.
4/14/43 ............................. 510.
9/8/44 .............................. 150.
They are not accompanied by any check for $2,500 which, under the agreement, should have been paid upon the execution thereof and their only probative effect is to show that one who had been an attorney for the defendants at the time of the agreement of June 12, 1941, apparently made these out of his special account to one Kramer who had been plaintiffs ’ attorney and apparently cashed the first three checks and indorsed the fourth to Margaret Sampson who later cashed it. Two of these checks are in an amount required by the alleged agreement of July 22, 1942, but in no other way do any of the checks fulfill or square with any provision of the agreement and the court finds as a fact that no agreement of that kind was ever made, executed or fulfilled by any one wholly or in part, although it is evident that negotiations about an agreement of some kind did take place and some payments, referable only to the contract of June 12, 1941, were made and received. Whether these negotiations looked to an instrument of the kind that was prepared and presented to the parties is not clear, though it seems very unlikely, but it is clear that the individual defendant himself neither signed, nor wished to approve, the agreement for his signature does not appear on the agreement and someone has indorsed thereon the words “Not signed by Jos. Kennedy.” The checks, as has been said, are insufficient to show an adoption of the agreement or even a part performance thereof, either by identity of dates or amount, and there is no evidence anywhere that the instrument ever, in fact, was executed and became an agreement between the parties, except the allegations in the *931 answer. The individual defendant did not take the stand but rested on plaintiffs’ case which included liberal portions of his deposition before trial.
This alleged second contract has nowhere in it anything to indicate that if Edward executed it he would execute it in his official character as administrator, or that he would execute it on behalf of the minors described in it and its statement that Margaret Sampson would act for them is supported by no legal authorization or power in her at any time to do it. Even if there had been an agreement it could not have affected the rights of the three plaintiffs who were infants at the time of the negotiations and took no part in them. Their rights under the first contract which was for their benefit could not have been extinguished by Edward G. Kennedy, either as administrator (Knowles v. Erwin, 43 Hun 150, affd. 124 N. Y. 633), or as their brother, or as a fellow third-party beneficiary, and Margaret Sampson had no better authorization or power. If Edward had attempted to execute the second contract as administrator, his attempt would have been futile also because, although there is no direct evidence of the disposition he made of the copy of the first contract left in his possession at the time of its execution, the inference from the record, and particularly from the stenographer’s minutes, is that he held it not as administrator but in his personal capacity as a beneficiary under it or even as a mere custodian, whose possession was that of those for whom he held, in the same manner as the husband received and held the agreement in the Knowles case cited above. Further, the record indicates that the other third-party beneficiaries all knew of the first contract, assented to it, relied on it and were conducting themselves in accord therewith and there was no one empowered to modify the first contract for them.
It was evident, however, that the plea of this second contract was not seriously urged by the defendants. They presented no proof to show that Joseph had ever executed it, or, in reliance upon the agreement of which it might be evidence, had fulfilled all the obligations it cast upon him. At the close of the case the defendants’ attorney on his argument said in reference to Edward as a beneficiary and in reference to Margaret, “ True they claim specific performance on the part of the agreement to deliver the stock. We have no objection to that. We have tendered the stock. They can have the stock any time they want it. ’ ’ This is not the language of one who seriously believes a second contract had actually been executed and performed by his client which destroyed rights created under the first. However, the alleged second contract itself in its fourth para *932 graph provided that default in the payment of any installment of the total sum of $6,000 as therein provided, for a period of five days after it became due and payable, should at the option of Edward and Margaret become null and void and all the parties be relegated to their respective rights theretofore existing and any moneys already paid thereunder should be applied toward the moneys payable under the first contract. Since the record shows that even if this alleged second contract had been executed no payments sufficient to constitute full performance by Joseph T. Kennedy, Jr., were ever made, it would, in any event, have fallen by its own terms and the parties all be relegated to the contract of June 12, 1941. On this question, then, the court will find not only that the second agreement was never executed or made, but that the obligations it imposed upon the defendant Joseph T. Kennedy, Jr., were never met or fulfilled and by its own terms it would have fallen, leaving the parties’ rights controlled by the agreement of June 12, 1941.
The problem, then, is what are the plaintiffs ’ rights under the agreement of June 12, 1941. The agreement says specifically that they were each to receive 7% of the outstanding stock of the corporation in their own names if they were then of age; if they were then not of age they were designated as beneficiaries under certificates to that amount issued to the defendant, Joseph T. Kennedy, Jr., as trustee for them until their majorities when certificates for their shares were to be issued to them. An inconvenience arises from the circumstance that only three shares of the authorized corporate sfock were ever issued and they were all that the defendant Joseph ever held. However, it is clear from the agreement as a whole that the purpose thereof was to divide up all the corporate stock of the corporation among the children of Joseph T. Kennedy, Sr., in the percentages set out in the agreement. Strictly, each of the eight children would have been entitled to 12%% of the corporation. Each of the seven surrendered 5% shares to the defendant Joseph T., in consideration of his covenants in the agreement. It is true that they did not execute the agreement themselves and were not parties but it was expressly made for their benefit by the duly appointed administrator of the estate and is binding on the defendant Joseph T. Kennedy, Jr., who retains control of the corporation and the actual management of its business. The court has found no legislative authority for the issue of fractions of a share and without that authority apparently a share cannot be subdivided. (18 C. J. S., Corporations, § 198, p. 628, n. 12; 14 C. J. 393, Corporations, '§ 519-c, n. 31.) Stock Corporation Law, § 11 authorizes the creation and issue of ‘ ‘ shares *933 of stock” and says nothing about fractional shares. General Corporation Law, § 13 restricts corporate powers to those given by law or necessary to the powers given by law. The Attorney-General has given an opinion to the Department of State that a certificate of incorporation may not authorize the issuance of fractional shares of stock (1934 Atty. Gen. 237). This opinion was cited by a successor as authority in Opinions of the Attorney-General (1946, p. 316). The agreement makes sense only if it contemplates adjustment of the capital structure and the value of the no par shares to permit the issue of 100 in place of the three shares issued, for 100 shares are the least possible number that could be divided in accord with the terms of the agreement without issuing a fraction of a share, and it is clear that it was the intention of the parties that no stock should be issued or sold to others but that the corporation should be and remain a family corporation. The provisions for the purchase of the stock of those who should die definitely indicate this. It will be found, then, that the agreement was that Joseph T. Kennedy, Jr., who was in sole control of all the issued capital stock should, under the provisions of sections 12 and 13 of the Stock Corporation Law, • adjust the capital structure of the corporation to reduce the value of the shares without par value to permit the issue to him of the entire 100 authorized shares of stock and the transfer and registration thereof in the amounts and in the terms provided by the agreement and he will be directed to do now what he ought to have done long heretofore.
The advances of $50 a week which Joseph T. Kennedy, Jr., promised, covenanted and agreed should be made by the corporation did not become an obligation of the corporation because it was not a party to the agreement, the agreement was not executed in its name and at no time, either at its execution or subsequent thereto, did the sole stockholder, Joseph T. Kennedy, Jr., have any power to -bind the corporation in his character as an individual stockholder. (Lord v. Equitable Life Assur. Soc., 194 N. Y. 212, 228; McIlrath v. Waterbury & Sons Co., 193 App. Div. 491.) Further, the corporation never accepted nor received any benefits under the agreement (there were none provided by it that could be accepted), nor did it subject itself to any estoppel by any acts upon which others might have relied to their damage. It is true that any advances made as agreed by the corporation might have been illegal under Penal Law (§ 664) if made out of anything but net earnings or surplus, but the agreement was not necessarily illegal. It did not specify out of what the advances were to be made and, presumably, they were to be made out of funds legally applicable thereto, and this *934 is clear from the provision that they should be charged against the share or interest, in any dividends declared, of the person to whom, or for whom, they were made. Among the owners and holders of all the stock, acts under the agreement, had it been carried out by the corporation, would have been, unassailable. (Groh’s Sons v. Groh, 80 App. Div. 85, 91, revd. on other grounds 177 N. Y. 8; Lummis v. Crosby, 224 N. Y. 611.) In the circumstances, however, the unexecuted agreement could not and cannot be enforced against the corporation. Neither the individual defendant nor any one else could bind the corporation to make these advances (whether regarded as loans or absolute payments) unless the board of directors authorized them and the board could not be bound to declare dividends by any prior agreement, even its own or of the corporation. The declaration of dividends rests in the uncoerced discretion of the board of directors at the time of declaration or refusal to declare. No contract unrestrictedly to declare dividends can have any legal force even if executed by the corporation. (Lindgrove v. Schluter & Co., 256 N. Y. 439, 444.) A loan of corporate funds to a stockholder was forbidden by Stock Corporation Law (§ 59). A contract to make it was, then, a nullity. The plaintiffs assert that they are entitled to these advances in any event but it is the opinion of the court that whatever has been withheld from them as an advance not made should, if it ever existed, be found in the treasury of the corporation as surplus for distribution when they get their stock or in the capital structure of the corporation, from which neither the individual nor the corporate defendant could legally separate, or agree to separate, it for their sole benefit.
Nor can the individual defendant be held in damages for the omission of the corporate defendant to fulfill his agreement that it would advance $50 a week for the infants during their minorities. As we have said, if this was an agreement to advance capital, it was illegal and he, no more than the corporation, could be held if that were its interpretation. If it was an agreement to make advances out of surplus or net earnings before declaration of dividends, the position of the plaintiffs is no better. They cannot ask him to perform for the corporation even if it was ever in a position to perform what he had agreed it should. If it be said that its omission to perform constituted a breach of his covenant, which it undoubtedly did, there is nothing in the record to show that any of these infants suffered any damage thereby. They have apparently been supported by someone else or by their own efforts. Their health has not been affected, they have not lost anything to which they were entitled, *935 for it is either in the surplus of the corporation and they will find it there when they receive their stock, or if any one has illegally removed it from the corporate treasury or assets they may, by a derivative action compel its restoration. Accordingly, the court finds for the defendants on the demand for the advances of $50 weekly.
The defendants resist the demand that Joseph T. Kennedy, Jr., prepare and deliver a complete account of the affairs of the corporation from the death of his father, Joseph T. Kennedy, Sr., to date. To obtain this, ordinarily, they would be required to bring a stockholders’ action after they have obtained their stock and have been denied access to the books and records of the corporation. However, the individual defendant deliberately covenanted to prepare and deliver an account and the court can find no ground upon which he should or could be excused. He admitted in his deposition before trial that he had never prepared an account of the kind he had agreed to prepare and indicated that the books of the business were sufficient to enable him to prepare an account of that kind. He will be directed to specifically perform his agreement and to prepare and deliver to the administrator on behalf of the heirs of his father a full and just account of the income, expenses and earnings of the corporate defendant. This is all he promised and any attack upon his management of, or receipts from, the corporation must be made by the plaintiffs in a derivative action after they receive their stock.
All findings and conclusions necessary to the above determinations will be made. Both plaintiffs and defendants may, if they wish, submit proposed findings and conclusions upon which the court will pass.
The complaint against the corporate defendant will be dismissed. Settle decree on notice.