**In re CHUBBY'S PARKCHESTER, Inc.**

United States District Court
S. D. New York.

Jan. 3, 1951.

702

William Stephen Brown, New York City, for trustee.

Philip F. Schneider, New York City, for petitioner.

SUGARMAN, District Judge.

Petition to review a bankruptcy referee's order which dismissed the petition and denied the motion of Universal Factors, Inc., (hereinafter referred to as Universal) to recover from the trustee in bankruptcy, certain personal property in his possession, allegedly covered by two chattel mortgages wherein the corporate bankrupt, Chubby's Parkchester, Inc. (hereinafter referred to as the corporation) was mortgagor and Universal was mortgagee, and which order adjudged the said chattel mortgages void.

Prior to August 15, 1949, one David Zeeman individually owned and conducted a confectionery business under a trade name. He was in need of money. A broker arranged for a loan to be made to Zeeman by Universal. Zeeman was informed by one Goldhirsch, his attorney, that, before the loan would be made, the business would have to be incorporated, to enable Universal to exact a greater rate of interest than could have been legally undertaken by Zeeman individually. To obtain the loan, Zeeman consented to the formation of the corporation by Goldhirsch. The certificate of incorporation, filed August 5, 1949, listed Goldhirsch, and Feldman, and Carsons, employed in Goldhirsch's office and unknown to Zeeman, as the three directors until the first annual meeting of stockholders and each as a subscriber for one share of no par value common stock.

On August 15, 1949, certain events occurred, the chronology of which remains undisclosed by the record. The minutes of the corporation show that, at ten A. M. on that day, the incorporators, Goldhirsch, Feldman and Carsons, met at Goldhirsch's office and elected Goldhirsch as chairman and Feldman as secretary of the meeting. No waiver of notice of that meeting was executed by the incorporators. By-laws were adopted. They provided, among other things, that there be three directors none of whom need be stockholders; that there be a president, a vice president, a secretary and a treasurer; that the only officer authorized to execute the corporation's notes be the treasurer and that no other officer undertake so to do. Nowhere in the minutes of the incorporators' meeting does it appear that the corporation entertained any proposal from Zeeman for the transfer of his business to the corporation. The minutes of the incorporators' meeting were signed by Goldhirsch as chairman, and Feldman as secretary.

According to the minute book, simultaneously, at ten A. M. on August 15, 1949, there was also a meeting of the directors of the corporation, named in the certificate of incorporation. The same three, Goldhirsch, Feldman and Carsons, but now as directors, executed a waiver of notice of the first directors' meeting. They elected Goldhirsch temporary chairman, to act as such until relieved by the president, and Feldman temporary secretary until relieved by the permanent secretary. The actions of the incorporators were "ratified, approved and confirmed", as were the by-laws. No officers were elected. No proposal from Zeeman for the transfer of his business to the corporation was entertained, considered or acted upon. The temporary chairman and temporary secretary did not subscribe their names to the minutes.

Goldhirsch, Feldman and Carsons also, on August 15, 1949, each, by letter addressed to the corporation, resigned as a director thereof, "said resignation to take effect immediately". The incorporators did not assign their subscriptions to anyone. No stock certificate was ever issued to anyone and no entry was ever made in the stock book.

On the same day, August 15, 1949, Zeeman executed a bill of sale to the corporation wherein, for an undisclosed "sum of lawful money of the United States", he sold it "the confectionery and stationery business". Annexed to the bill of sale was a schedule, listing numerous fixtures, and

a statement in the form of an affidavit of title, signed by Zeeman, but unsworn.

On the same day, August 15, 1949, the corporation executed and delivered to Universal the first of the alleged chattel mortgages involved herein. It recited the sale by the corporation to Universal of the fixtures identified in a schedule annexed thereto, as security for the payment by the corporation to Universal of an $8700 indebtedness, evidenced by twenty-seven promissory notes. Zeeman placed his signature at the foot of each page of the schedule except the last. There appeared at the end of the entire instrument the words "Chubby's Parkchester, Inc., David Zeeman", and the seal of the corporation. No designation of Zeeman as an officer of the corporation appeared at that point of the document. There was, however, appended to the instrument an affidavit by Zeeman, stating that he "is President of Chubby's Parkchester, Inc.", and that the chattels described in the instrument were free of encumbrances. This affidavit was executed "Chubby's Parkchester, Inc., David Zeeman" and notarized. There was also appended to the instrument a corporate acknowledgement by a notary public that some unnamed person appeared before said notary and deposed that "he is the President of Chubby's Parkchester, Inc.", and that he executed the instrument, and affixed the seal by the order of the board of directors of the corporation. These papers were filed, as a chattel mortgage, in the City Register's office on August 17, 1949.

Further, on the same day, August 15, 1949, Zeeman signed an unacknowledged document, claiming that he was the owner of ten shares of the stock of the corporation, aggregating two thirds of its outstanding shares and that he consented to the procuring of a $7500 loan (not $8700) pursuant to a chattel mortgage simultaneously executed by the corporation to Universal.

Later, and on March 17, 1950, a second alleged chattel mortgage, which is part of the subject matter of the present review, was executed. It is on a printed form similar to the earlier one and has attached thereto a rider, subscribed at the foot thereof "Chubby's Parkchester, Inc., David Zeeman". At the foot of the instrument proper, there is the signature "Chubby's Parkchester, Inc., David Zeeman", with the seal of the corporation but again, no designation of Zeeman as an officer of the corporation. No affidavits or acknowledgements (similar to those appended to the earlier instrument) appear in the later instrument, which was filed as a chattel mortgage in the City Register's office on March 18, 1950.

From Zeeman's testimony before the referee, it appears that the March 17, 1950 instrument was as security for an advance by Universal to pay arrears, arising out of default in the payment of some of the twenty-seven notes for which the August 15, 1949 instrument stood as security. However, the disposition of the $1500 covered by the second instrument is quite vague.

On July 18, 1950, a petition for an arrangement was filed by the corporation and subsequently it was adjudged a bankrupt. The referee, in passing upon the validity of the two so called chattel mortgages, made findings of fact and conclusions of law, upon which he based the order now under review. In a memorandum, accompanying his findings and conclusions, the learned referee seems to have predicated his determination of invalidity upon two bases:— (1) that the mortgages in question lacked the actual consent of two thirds of the stockholders, entitled to vote, required by § 16 of the New York Stock Corporation Law, and (2) that, if Zeeman be deemed to have consented, notwithstanding the absence of the formal certificate required by § 16, his consent was a nullity, because he was not a stockholder of the corporation.

Considering first, the earlier instrument dated August 15, 1949, I am constrained to disagree with the learned referee's holding that the absence of the formal certificate of consent made it invalid. Section 16 specifically exempts from its operation "a purchase-money mortgage". The referee correctly found that, under the bill of sale executed by Zeeman to the corporation, the consideration was to be an undisclosed

"sum of lawful money of the United States". Visualizing what transpired, we have Zeeman selling to the corporation and the corporation mortgaging to Universal, to obtain funds with which to pay Zeeman. When the transaction occurred, the corporation admittedly had no funds with which to pay Zeeman the money contemplated as consideration for the sale to it of his business. It arranged simultaneously to obtain that money by a mortgage to Universal. That it used the proceeds of that mortgage to pay Zeeman is evidenced by Zeeman's testimony before the referee:—

"Q. Now, I refer you to Petitioner's Exhibit A, which is a bill of sale of property from you individually to Chubby's Parkchester, Inc., and ask you what did you receive from Chubby's Parkchester, Inc., for turning over that property to the bankrupt corporation? A. I received a loan of $7500. Q. Who did you receive the loan from? A. I don't know—it was supposed to be from Universal Factors. I got three different checks at the time."

■ I am of the opinion that the entire transaction was one indivisible event, spelling out a purchase money mortgage. In re Quigley Motor Sales, Inc., 2 Cir., 1935, 75 F.2d 253. I believe that it is to be fairly inferred from the language in that case that, where a vendee of personal property executes a mortgage thereon to obtain funds with which to pay the vendor, all in one simultaneous transaction, a purchase money mortgage, not subject to § 16 of the New York Stock Corporation Law, results.

It does not necessarily follow, however, that merely because the transaction of August 15, 1949 is exempt from the operation of § 16 of the Stock Corporation Law, the instrument then executed is a valid chattel mortgage. The record does not show what Zeeman did with the checks received from Universal, at the closing, but there is a suggestion that he deposited them in the corporation's bank account. Assuming this to be so, two possibilities become evident. Zeeman turned these funds back to the corporation either as a loan to it or to buy stock therein.

■ If Zeeman intended to loan the sale proceeds back to the corporation, he obviously never became a shareholder thereof and had no authority to execute the so-called chattel mortgage of August 15, 1949 and it would, upon that assumption, be void.

■ If, however, Zeeman returned these funds to the corporation in payment for stock therein to be purchased by him, he thereby became a shareholder of the corporation, notwithstanding that he never received a stock certificate. White on Corporations, (12th Ed.) § 65, par. 49, Vol. 4, p. 330.

Assuming the latter hypothesis, that Zeeman became a shareholder of the corporation, did that fact alone, in the light of all the surrounding circumstances, clothe him with power to speak for the corporation? I think not.

While I am mindful of the common failure of "one-man" corporations to adhere to strict corporate practices and of the tendency to ignore such procedural defects, Wohl v. Avon Electrical Supplies, Inc., et al., Sup., 55 N.Y.S.2d 252, not reported in State Reports, I have found no case, nor has any been indicated, where complete disregard of statutory and by-law restrictions has been countenanced.

At the hour, on August 15, 1949, that Zeeman executed the so-called chattel mortgage of the corporation, Goldhirsch, Feldman and Carsons were its directors or had shortly before resigned. In either event Zeeman was never a director.

■ As stated at the outset, his assertion of presidency of the corporation in the instrument of August 15, 1949, was, at best, dubious, but, whether he asserted so or not, he was never elected president as required by § 60 of the New York Stock Corporation Law and the by-laws of the corporation. And, even if he were, his act was a nullity for the by-laws forbade any but the treasurer to execute the type of instrument here involved.

■ Upon the unique facts here presented, it would appear that there was no valid corporate act performed in the ex-

ecution and delivery of the so-called chattel mortgage. In re Great Eastern Fur Dyeing & Dressing Co., Inc., D.C.E.D.N.Y.1936, 14 F.Supp. 921.

■ Assuming ownership by Zeeman of the entire stock of the corporation (except possibly that subscribed to by the incorporators in the certificate of incorporation and never assigned away by them) that, in and of itself, did not vest in Zeeman the power to validly act for the corporation in the premises. McIlrath v. S. Waterbury & Sons Co., 193 App.Div. 491, 184 N.Y. 886, 2nd Dept., 1920; Boer v. Garcia, App.Div. 1st Dept., 1921, 197 App. Div. 933, 188 N.Y.S. 911; Kennedy v. Kennedy, Sup., 91 N.Y.S.2d 294, not reported in State Reports.

■ Here, there is not the situation of an act by a long existing corporate entity or a custom of business dealings between Universal and the corporation. The latter was formed at the insistence of the former, if the loan was to be made. Universal knew all this. If it undertook to make the loan of August 15, 1949 without ascertaining that there had been compliance with statutes, by-laws and normal corporate practices, it did so at its own peril, at least insofar as its claimed security is concerned.

■ As to the so-called chattel mortgage of March 17, 1950, this obviously was not a purchase money mortgage. In re Quigley Motor Sales, Inc., supra. Hence the consent required by § 16 of the Stock Corporation Law was necessary. It was, however, present (by Zeeman's execution of the instrument, assuming him to be the sole shareholder) without a certificate. But here, there was even less pretense at meeting the requirements of the statute and by-laws than was employed in the earlier instance. Consequently, there was here too, an utter absence of a valid corporate act.

For the reasons herein ascribed, the referee's order is

Affirmed.