Sheridan v. DeHart, et al.          CV-02-412-M     09/03/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


William C. Sheridan,
      Plaintiff

      v.                                  Civil No. 02-412-M
                                          Opinion No. 2003 DNH 153
James DeHart, Thomas Trevethick,
New Hampshire Supreme Court Committee
on Professional Conduct, Mark Hanlon,
James McDowell, III, and Geraldine Karonis,
      Defendants


                        **O R D E R**


      Pro se plaintiff, Attorney William Sheridan, brings this

action seeking damages, costs, and attorney's fees for what he

says were "violation[s] of the federal Constitution, as well as

federal laws, such as 28 U.S.C. § 1983 and Section 1 of the

Sherman Act."  Amended complaint at 1.[1]

---

      [1]     Almost certainly, plaintiff's reference to "28 U.S.C. §
1983" is a typographical error, meant to be an invocation of 42
U.S.C. § 1983.  But, of course, defendants could not have
"violated" section 1983, since that statute does not vest
citizens with any substantive rights.  Instead, it merely
provides a vehicle by which individuals may pursue civil actions
against state actors for alleged violations of their federally
protected statutory or constitutional rights.  See, e.g., Graham
v. Connor, 490 U.S. 386, 393-94 (1989) ("As we have said many
times, § 1983 is not itself a source of substantive rights, but
merely provides a method for vindicating federal rights elsewhere
conferred.") (citation and internal quotation marks omitted).

## Background

The relevant facts appear to be largely undisputed. To the extent that they are contested, however, the court will, for the purpose of ruling on the pending motions, recite them in the light most favorable to Sheridan.

In and before 1998, Attorney Sheridan practiced in the area of bankruptcy law. As part of that practice, he mailed an "informational pamphlet" entitled "THERE MAY BE AN ALTERNATIVE TO FORECLOSURE," to individuals whose homes were subject to bank foreclosure. In it, Sheridan explained the benefits of obtaining relief under Chapter 13 of the bankruptcy code and advised recipients to contact an attorney about the possibility of availing themselves of Chapter 13. The pamphlet included Sheridan's name and telephone number.

In September of 1998, Sheridan received a notice from the New Hampshire Professional Conduct Committee ("PCC"), informing him that, in response to a letter mailed to it by defendant Hanlon (which included a copy of Sheridan's pamphlet), the Committee had opened an investigation into his use of direct

mailings as part of his marketing efforts. Concerned by that development, Sheridan says he removed his telephone number from the pamphlet, "so that it was clear that it was only informational." Amended complaint at para. 10. As a consequence of modifying the pamphlet, Sheridan says his practice and income declined sharply.

Subsequently, in 2000, Chief Judge Vaughn of the United States Bankruptcy Court for the District of New Hampshire became aware of potential problems associated with Sheridan's practice before that court. Accordingly, Judge Vaughn directed Geraldine Karonis, the Assistant United States Bankruptcy Trustee, to investigate the matter and file a report of her findings with the court. Prior to a scheduled hearing on that matter, Karonis learned of Sheridan's practice of sending unsolicited pamphlets to potential bankruptcy clients. One day, she encountered Sheridan at the bankruptcy court and told him that she believed his practice of mailing the pamphlet to individuals subject to foreclosure proceedings might violate provisions of the New Hampshire Code of Professional Conduct. As a follow-up to that conversation, Karonis faxed Sheridan a copy of the New Hampshire

3

Rules of Professional Conduct, and highlighted the provisions dealing with attorney advertising. That was the extent of Karonis's direct dealings with Sheridan on the subject. Nevertheless, from that, Sheridan says he inferred that Karonis had (implicitly) threatened to seek his suspension from practicing before the United States Bankruptcy Court if he continued to distribute the pamphlet.[2]

Subsequently, Karonis completed her investigation into Sheridan's conduct and reported her findings to Judge Vaughn, stressing that, in her view, the most serious matters involved issues concerning Sheridan's use and/or management of client

_____

[2]     At the time, the pertinent rule of professional conduct provided:

> A lawyer may not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, by mail, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The terms "solicit" and "solicitation" include contact . . . by letter or other writing . . . directed to a specific recipient, but do not include letters addressed or advertising circulars distributed generally to persons not known to need legal services of the kind provided by the lawyer in a particular matter, but who are so situated that they might in general find such services useful.

Rule 7.3(c), N.H. Rules of Professional Conduct (2000).

funds.  Although she did not advance it as a ground for disciplining Sheridan, Karonis did mention Sheridan's practice of sending the pamphlets to potential clients and told the court that she believed it "may or may not be permissible under the New Hampshire [Rules of Professional Conduct]."  Exhibit E to Karonis declaration, transcript of June 19, 2000 hearing at 17.  She added her own opinion, however, that, "From my reading of the rules, it is not permissible."  Id.

In the wake of that hearing, Judge Vaughn appointed Nancy Michels (not a party to this litigation) as special counsel to investigate Sheridan's possible violations of the Rules of Professional Conduct.  In September of 2000, Michels filed her report with the court and recommended that a disciplinary proceeding be instituted against Sheridan.  In June of 2001, the court held a trial on the complaint.  Sheridan's practice of circulating the pamphlet was not, however, an issue in that proceeding.  See Michels v. Sheridan, 2001 BNH 43, 2001 WL 1737058 (Bankr. D.N.H. Oct. 12, 2001).  Following trial, the court concluded that:

5

> [D]uring a twenty month period between January 13, 1999, and September 29, 2000, Attorney Sheridan committed at least 88 violations of the NHRPC. These violations involved thirty clients in thirty-three separate cases, exclusive of the five violations in this proceeding. Other than the violation of NHRPC 1.15 in In re Hogan, all of the remaining violations involved NHRPC 1.1 [requiring a lawyer to provide "competent representation to a client"]. Based upon the record in this proceeding, Attorney Sheridan has demonstrated a continuing unwillingness or inability to competently provide services to clients and to meet his professional obligations to this Court. In the Stipulation[,] Attorney Sheridan admitted to allegations which at best show a repeated pattern of conduct involving inattention to and neglect in handling client matters. Accordingly, it is necessary for this Court to impose disciplinary sanctions on Attorney Sheridan.

Id. The court then suspended Sheridan from practicing in the bankruptcy court for one year and granted Michel's request for attorney's fees in the amount of approximately $30,000. That decision was affirmed by the United States Bankruptcy Appellate Panel of the First Circuit. In re Disciplinary Proceedings, Sheridan v. Michels, 282 B.R. 79 (B.A.P. 1st Cir. 2002). According to Sheridan, he has appealed the matter to the United States Court of Appeals for the First Circuit and is presently awaiting a decision.

6

Meanwhile, notwithstanding his knowledge that the PCC had opened an investigation into his use of direct mailings to potential clients, and despite his conversation with Karonis on that topic, Sheridan apparently never bothered to research the attorney advertising issue (as one might expect a licensed attorney facing an investigation would do). Had he done so, he would have quickly discovered an opinion of the United States Supreme Court which expressly approves informational mailings of the very sort that he had been distributing.[3] Instead, Sheridan unilaterally amended his pamphlet and, eventually, unilaterally decided to stop mailing it to potential clients. Importantly, neither Karonis nor the PCC ever ordered or directed Sheridan to amend the pamphlet or to stop distributing it.

Unfortunately for Sheridan, his decision to stop mailing the pamphlet to potential clients apparently resulted in a dramatic decline in his bankruptcy practice. It was not until the Fall of 2000 that Sheridan says he "came across" the relevant Supreme

---

[3]    In 1988, the United States Supreme Court held that states cannot categorically ban attorneys from soliciting legal business through truthful and non-deceptive letters directed to individuals known to face particular legal problems. Shapero v. Kentucky Bar Ass'n, 486 U.S. 466 (1988).

7

Court decision and notified the PCC of its existence. Amended complaint at para. 17. At that point, the PCC terminated the pending investigation into Sheridan's conduct. Id. at para. 18.

Sheridan then filed this suit, in which he seeks compensatory, consequential, and enhanced damages, as well as his costs and attorney's fees against the named defendants. According to Sheridan, he bases his claims on two distinct events related to his practice of mailing the informational pamphlet to potential clients: "(1) the complaint commenced against Sheridan by the PCC in which the PCC claimed that Sheridan should be disciplined because he had mailed bankruptcy informational brochures to prospective clients in September 1998; and (2) [Assistant United States Bankruptcy Trustee] Karonis threatening to commence a disciplinary action against Sheridan in June of 2000 because Sheridan had mailed bankruptcy informational brochures to prospective clients in the 2000 calendar year." Plaintiff's memorandum (document no. 32) at para. 1.

Parenthetically, it probably bears noting that it is not entirely accurate for Sheridan to characterize the PCC's conduct

8

in this matter as amounting to a "claim" that "Sheridan should be disciplined" for mailing the pamphlet. Rather, the record suggests that the PCC received a letter/complaint from a member of the New Hampshire Bar concerning Sheridan's use of direct mail advertising and simply opened an investigation to determine whether that conduct violated provisions of the Rules of Professional Conduct. Importantly, the July 30, 2001, petition submitted by the PCC to the New Hampshire Supreme Court seeking Sheridan's interim suspension appears to have been based on conduct entirely unrelated to his having distributed the bankruptcy pamphlet. See Exhibit H-A to Declaration of Geraldine Karonis.

With respect to Karonis's alleged conduct, even reading Sheridan's amended complaint quite liberally, at the very most it alleges that, based upon Karonis's general comments on the matter, Sheridan inferred that she might seek to commence a disciplinary action against him (presumably before the Bankruptcy Court) if she concluded that he had violated the Rules of Professional Conduct. Nowhere in the amended complaint does

9

Sheridan allege that Karonis ever explicitly made any threatening statements in that regard.

In any event, although it is hardly a model of clarity, Sheridan's amended complaint sets forth four counts in which he appears to allege the following causes of action: violations of the Sherman Act by the PCC, Mark Hanlon, James McDowell, III, and Geraldine Karonis (count one); violations of the Sherman Act and his First Amendment Rights by Thomas Trevethick and James DeHart (count two); a "failure to adequately train its personnel" respondeat superior claim against the Professional Conduct Committee (count three); and a Bivens claim against Karonis for having violated his First Amendment rights (count four).[4]

---

[4] Defendants DeHart and Trevethick are administrators of the Professional Conduct Committee and Joseph McDowell, III, was appointed as counsel to the Bar Association in connection with the investigation into Sheridan's conduct. According to counsel for defendants, Joseph (not James, as named in plaintiff's complaint) McDowell, is the proper party to this action. Although Joseph McDowell had not yet been served with a copy of the complaint when defense counsel filed the pending motion to dismiss, he was aware of plaintiff's suit and requested the Office of the New Hampshire Attorney General (counsel to several defendants) to represent him in this matter.

10

Defendants DeHart, Trevethick, McDowell, and the Professional Conduct Committee (collectively, the "PCC Defendants") move to dismiss all claims against them, saying Sheridan's amended complaint fails to state any claims upon which relief may be granted.  They also assert that, to the extent Sheridan has set forth a viable claim, they are entitled to absolute immunity and are shielded from any award of monetary damages by the State Action doctrine.  Defendant Karonis also moves to dismiss all claims against her, saying the court lacks subject matter jurisdiction over those claims and she enjoys sovereign immunity with respect to plaintiff's antitrust claims. In the alternative, Karonis moves for summary judgment. Plaintiff objects.

## Discussion

I.   Claims Against Assistant U.S. Bankruptcy Trustee Karonis.

Plaintiff's amended complaint appears to set forth two claims against Karonis: first, that she (and other defendants) undertook a "knowing concerted refusal to deal and a horizontal boycott," amended complaint at para. 22, in violation of the Sherman Antitrust Act (count one); and, second, that Karonis,

11

while acting under color of law, violated plaintiff's First Amendment rights (count four).

A.    The Antitrust Claim.

In count one of his amended complaint, Sheridan alleges that:

> The conduct of the Professional Conduct Committee, Mark Hanlon, James McDowell, Geraldine Karonis of the US Trustee's Office for the Justice Department constitutes a knowing concerted refusal to deal and a horizontal boycott against Sheridan in violation of Section 1 of the Sherman Act . . . insofar as it involved state action that had been instigated at the direction of and in concert with one or more of Attorney Sheridan's competitors to cut off Attorney Sheridan's access to his customer base, as well as to his license to practice law.

Amended complaint at para. 22 (citations omitted). Notwithstanding Sheridan's conclusory claims to the contrary, the factual allegations in his amended complaint make clear that Karonis was, at all times material to this proceeding, acting in her official capacity, as Assistant United States Bankruptcy Trustee. See, e.g., Amended complaint at para. 15 n.5. And, because Sheridan's anti-trust claim against Karonis is one brought against a federal official for conduct undertaken during

12

the course of her official duties, she is entitled to absolute immunity.  See Sea-Land Service, Inc. v. Alaska Railroad, 659 F.2d 243 (D.C. Cir. 1981).  See also Name.Space, Inc. v. Network Solutions, Inc., 202 F.3d 573 (2d Cir. 2000); Lawline v. The American Bar Ass'n, 738 F. Supp. 288 (N.D. Ill. 1990).

B.    The First Amendment Claim.

In count four of his amended complaint, Sheridan alleges that, "Geraldine Karonis, as a federal agent, under color of law, took the steps alleged herein against Sheridan in response to his exercise of his well established free speech rights guaranteed by the federal constitution, entitling Sheridan to damages against her, as well as court costs and attorney[']s fees."  Amended complaint at para. 32.  Based upon those allegations, the court will assume that Sheridan seeks to assert a Bivens claim against Karonis for having unconstitutionally chilled his protected speech.  See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Typically, in order to show that a deprivation of a First Amendment right has occurred, a plaintiff must, at a minimum,

13

demonstrate that the defendant intended to inhibit speech protected by the First Amendment, <u>Tatro v. Kervin</u>, 41 F.3d 9, 18 (1st Cir. 1994), and that the defendant's conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect or too remote." <u>Sullivan v. Carrick</u>, 888 F.2d 1, 4, (1st Cir. 1989). And, of course, a plaintiff's response to a defendant's allegedly wrongful or "threatening" conduct must be reasonable. <u>See, e.g.</u>, <u>Mendocino Environmental Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999) (holding that, with regard to a plaintiff's claim that his or her First Amendment rights were chilled, "the proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.") (citation and internal quotation marks omitted); <u>Bart v. Telford</u>, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.").

Here, a reasonable and properly instructed trier of fact could not conclude that Sheridan's response to his conversation

with Karonis and/or her subsequent decision to fax him a copy of the New Hampshire Rules of Professional Conduct was reasonable. Stated somewhat differently, Karonis's conduct would not, as a matter of law, have deterred a person of ordinary firmness (particularly one trained in, and licensed to practice, law) from engaging in the sort of conduct in which Sheridan was engaged. This is particularly true if, as Sheridan claims, the pamphlet was the source of an extraordinary percentage of his work. Presented with Karonis's comments about his conduct (especially in light of the then-pending Professional Conduct Committee investigation into that very conduct), a reasonable person would not have simply stopped disseminating the pamphlet. Instead, he or she would have sought legal advice about the matter. If, as in this case, the person is an attorney, he or she would have at least casually (but promptly) researched the legal issue raised. Sheridan apparently did not. Instead, he unilaterally decided to stop sending out his pamphlet, only to discover some months later (apparently inadvertently) that the United States Supreme Court had specifically held that such conduct was protected by the First Amendment.

In short, it was not reasonable for Sheridan to stop disseminating the pamphlet simply based upon Karonis's statement that <u>she</u> believed he <u>might</u> be violating the Rules of Professional Conduct. After all, Karonis was not charged with enforcing those rules and claimed no expertise beyond that of an ordinary attorney regarding the extent to which they might, as written, conflict with relatively recent Supreme Court precedent.

Little more need be said of Sheridan's First Amendment claim. It is sufficient to point out that, as to that count in his amended complaint, Karonis is entitled to judgment as a matter of law.

II. <u>Claims Against Defendants DeHart, Trevethick, McDowell, and the Professional Conduct Committee</u>.

The PCC Defendants say that, with respect to plaintiff's First Amendment and Sherman Act claims, they are shielded from liability by absolute immunity and the State Action doctrine. The court agrees.

The PCC Defendants are not subject to suit under the Sherman Act. <u>See</u> <u>Bates v. State Bar of Arizona</u>, 433 U.S. 350 (1977);

16

Parker v. Brown, 317 U.S. 341 (1943). And, with regard to Sheridan's First Amendment claims (pursuant to which he seeks only monetary damages, not prospective relief of any sort), the PCC Defendants are entitled to immunity. See Supreme Court of Virginia v. Consumers Union, 446 U.S. 719 (1980); Green v. State Bar of Texas, 27 F.3d 1083 (5th Cir. 1994).

III. Sherman Act Claim Against Mark Hanlon.

In count one of his amended complaint, Sheridan asserts that Attorney Mark Hanlon, one of his alleged "competitors," acted in concert with the PCC Defendants in bringing the complaint against him before the PCC. Hanlon's alleged goal was to "cut off Attorney Sheridan's access to his customer base, as well as to his licence to practice law."

The amended complaint is, however, plainly deficient on its face. See generally Green, 27 F.3d at 1087. As the United States District Court for the Southern District of New York has observed:

> To withstand a motion to dismiss, the plaintiff in a
> Sherman Antitrust Conspiracy claim must allege (1)
> concerted action; (2) by two or more persons; (3) that

17

> unreasonably restrains interstate or foreign trade or
> commerce.

<u>In re NASDAQ Market-Makers Antitrust Litigation</u>, 894 F. Supp. 703, 710 (S.D.N.Y. 1995).  <u>See also</u> <u>Ford Motor Co. v. Webster's Auto Sales, Inc.</u>, 361 F.2d 874, 878 (1st Cir. 1966) (noting that an alleged agreement between two or more parties is "[f]undamental . . . to any section 1 violation").

Here, the amended complaint fails to allege sufficient facts which, if taken as true, would constitute a violation of that statute.  At best, it alleges that Hanlon brought to the PCC's attention the fact that Sheridan was distributing the informational pamphlet (albeit with the alleged intention to harm Sheridan's business).[5]  Standing alone, that fact (even if true) cannot give rise to liability under the Sherman Act.

---

[5]     Regardless of his subjective motivation, Hanlon, no doubt, felt he was ethically obligated to report Sheridan's conduct to the PCC.  In September of 1998, the New Hampshire Rules of Professional Conduct provided:

> A lawyer having knowledge that another lawyer has
> committed a violation of the Rules of Professional
> Conduct that raises a substantial question as to the
> lawyer's honesty, trustworthiness or fitness as a
> lawyer in other respects <u>shall inform</u> the appropriate
> professional authority.

Rule 8.3(a), N.H. Rules of Professional Conduct (1998) (emphasis supplied).

Instead, to plead a viable claim under Section 1 of the Sherman Act, Sheridan must, at a minimum, allege sufficient facts which, if believed, could lead a reasonable trier of fact to conclude that Hanlon and at least one other person engaged in some sort of concerted effort to restrain trade. Hanlon's unilateral decision to report what he believed to be unprofessional conduct to the PCC is not, without more, sufficient. See, e.g., <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 768 (1984) ("Section 1 of the Sherman Act . . . reaches unreasonable restraints of trade effected by a contract, combination or conspiracy between separate entities. It does not reach conduct that is wholly unilateral.") (citations and internal quotation marks omitted).

Hanlon has not, however, moved to dismiss the claim against him. Hanlon's silence is, no doubt, explained by the fact that he was never served with a copy of the original or amended complaint (at least, the court's docket contains no evidence of service). Accordingly, that claim is dismissed for plaintiff's failure to timely serve Hanlon in accordance with the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 4(m). <u>See also</u>

19

<u>Figueroa v. Rivera</u>, 147 F.3d 77, 83 (1st Cir. 1998) ("Under Fed. R. Civ. P. 4(m), a district court may dismiss a complaint without prejudice as to a particular defendant if the plaintiff fails to serve that defendant within 120 days after filing the complaint.").

## Conclusion

For the foregoing reasons, and for the reasons set forth in defendants' memoranda (documents no. 7, 11, and 30), the PCC Defendants' motion to dismiss (document no. 7) is granted. Likewise, Karonis's motion to dismiss or, in the alternative, for summary judgment (document no. 11) is also granted.

As to the sole remaining claim in plaintiff's complaint - his assertion that Attorney Mark Hanlon violated the Sherman Act (count one) - it fails to state a viable cause of action. But, because plaintiff has failed to serve Hanlon with a copy of the original or amended complaint within the time allowed, that claim is dismissed, without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Sheridan's motion for additional time within which to file responsive pleadings (document no. 21), as well as his motion for leave to file a memorandum of law (document no. 25) are granted. Karonis's motion to strike (document no. 27) and her motion for leave to file a reply (document no. 34) are denied as moot.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 3, 2003

cc:  William C. Sheridan, Esq.
     Daniel J. Mullen, Esq.
     Gretchen L. Witt, Esq.
     Mark Hanlon, Esq.