United States Court of Appeals,

Fifth Circuit.

No. 93-1587.

Bennie GREEN, d/b/a Eagle Consulting Firm, Plaintiff-Appellant,

v.

STATE BAR OF TEXAS, Unauthorized Practice of Law Committee, et al., Defendants,

Mark Ticer, Individually, et al., Defendants-Appellees.

Aug. 4, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, DUHÉ and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant, Bennie Green, d/b/a Eagle Consulting Firm, appeals from the district court's grant of Appellees' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Appellant sued several state and private actors under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and the Sherman Antitrust Act, 15 U.S.C. § 1. We affirm.

BACKGROUND

Bennie Green, d/b/a Eagle Consulting Firm, is an insurance adjuster licensed by the state of Texas. In August 1991, the Unauthorized Practice of Law Committee (UPLC), acting under the authority granted to it by Texas Government Code § 81.102(a), sued Green to prevent him from engaging in the unauthorized practice of law. After a hearing in August 1991, the state district court issued a temporary injunction against Green. On November 5, 1991, the state district court converted the temporary injunction to a permanent injunction. Because Green was not a party to the November 5 proceeding, the state district court vacated the permanent injunction and reinstated the temporary injunction.

In response, Green filed this action against the UPLC; Mark Ticer, legal counsel for the UPLC; James Blume, chairman of the UPLC; State Farm Insurance Company; Travelers Insurance Company and Rodney D. Young Insurance Agency. In December 1992, the district court granted

all defendants' motions to dismiss under Rule 12(b)(6), but granted Green leave to amend his complaint. Green filed an amended complaint, but because he failed to correct the deficiencies of his original complaint, the district court again granted the defendants' motions to dismiss. Green appeals.

## DISCUSSION

### I. *Standard of Review*

We review a Rule 12(b)(6) dismissal de novo. We must accept all well-pleaded facts as true, and we review them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992).

### II. *Section 1981 Claims*

In his complaint, Appellant alleges that he entered into contracts with his clients to negotiate settlements of their insurance claims with State Farm. Appellant argues that State Farm refused, solely because of his race,[1] to honor his client contracts in violation of 42 U.S.C. § 1981.[2]

To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *See Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). The "enumerated activity" implicated in this case is the right to "make and enforce contracts."

In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132

---

[1]Appellant is African-American.

[2]Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(1989),[3] the Supreme Court explained what is meant by "make and enforce contracts": "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Id.* at 176, 109 S.Ct. at 2372.  The Court further elaborated that the making of contracts extended only to the formation of a contract and not to problems that may arise later.  *Id.*  The second protection regarding enforcement of contracts "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices."  *Id.* at 177, 109 S.Ct. at 2373.

Appellant has failed to allege facts in his complaint that place him in the ambit of protection under § 1981 as defined by the Supreme Court in *Patterson.*  Appellant has not complained that State Farm refused to contract with him or that State Farm somehow impeded his right to enforce a contract in either the courts or nonjudicial avenues.  All he alleges is that State Farm refused to honor a third-party contract he had with his clients.  Thus, Appellant has failed to allege how State Farm could have discriminated against Appellant in the formation or enforcement of any contract.  Accordingly, Appellant has presented no viable claim upon which relief can be granted under § 1981.

III. *Antitrust Claims*

Appellant asserts that the defendants violated § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.[4]  Section 1 of the Sherman Antitrust Act forbids contracts, combinations, or conspiracies in restraint of trade or commerce.  15 U.S.C. § 1.  To prevail on a § 1 Sherman Antitrust Act claim,

---

[3]Effective November 21, 1991, § 1981 was amended, and that amendment statutorily overruled *Patterson.*  The Supreme Court held in *Rivers v. Roadway Express, Inc.,* --- U.S. ----, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), that the Civil Rights Act of 1991, § 101 did not apply retroactively to conduct that occurred prior to its enactment.  Although Appellant does not allege a specific date of the alleged conduct by State Farm, it had to occur after February 11, 1991, the day Appellant received his state license, and prior to August 8, 1991, the day the UPLC obtained a temporary restraining order against Appellant.  Accordingly, we apply *Patterson,* the law in force at the time of the alleged wrongful conduct.

[4]In his original complaint, Appellant failed to specify which section of Title 15 the defendants violated.  In his First Amended Complaint, he places all allegations regarding antitrust violations under the heading "ANTITRUST 15 U.S.C. § 1."

Appellant must show that the defendants' conspiracy produced some anti-competitive effect in the relevant market. *See Kiepfer v. Beller,* 944 F.2d 1213, 1221 (5th Cir.1991). Appellant may not just show that defendants' actions injured him but must also demonstrate that the defendants' actions unreasonably restrained competition. *Id.*

Appellant first alleges that Ticer conspired with the other defendants to cause Appellant's clients to breach their contracts with Appellant so that they might enter into contracts for representation with Ticer and other members of the State Bar of Texas. Appellant also alleges that defendants[5] in pursuit of a conspiracy forced him to cease doing business. Such allegations do not sufficiently state a claim under § 1 as they demonstrate no unreasonable restraint of competition in a relevant market.

Appellant's final antitrust allegation involves only the UPLC and Ticer. Appellant alleges that the UPLC and Ticer were part of a conspiracy to fix the price of representation in insurance negotiations and to preclude Appellant and other insurance adjusters from competing in interstate commerce. The only specific averment of a possible agreement between UPLC and Ticer involves the institution of the suit against Appellant for the unauthorized practice of law. The UPLC is a state agency, *Krempp v. Dobbs,* 775 F.2d 1319, 1321 n. 1 (5th Cir.1985), that is authorized to pursue actions against those allegedly engaged in the unauthorized practice of law. Texas Gov't Code Ann. § 81.102(a) (West 1988). Ticer was the agency's counsel in the action against Appellant. Accordingly, Ticer and the UPLC are immune from an antitrust suit under the state action doctrine. *See Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *Benton, Benton & Benton v. Louisiana Pub. Facilities Auth.,* 897 F.2d 198 (5th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991).

IV. *Monetary Damages Under Section 1983*

Green asserts claims for monetary damages under 42 U.S.C. § 1983 against all defendants. To state a cause of action under § 1983, Appellant must allege that some person, acting under state

---

[5]The First Amended Complaint actually states that "Defendant" conspired to force Appellant to cease doing business. We do not know to which defendant Appellant refers. We will read, however, the complaint liberally and assume that Appellant refers to all defendants.

or territorial law, has deprived him of a federal right. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 387 (5th Cir.1985), *cert. denied,* 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988).

A. UPLC, Blume and Ticer

The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1871, 109 L.Ed.2d 264 (1990). That amendment may not be evaded by suing state employees in their official capacity because such an indirect pleading device remains in essence a claim upon the state treasury. *Stem v. Ahearn,* 908 F.2d 1, 3 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). State officials sued in their official capacity are not deemed "persons" subject to suit within the meaning of § 1983. *Id.* at 4. Accordingly, Appellant's claims under § 1983 against the UPLC, a state agency, and Blume and Ticer in their official capacities, must be dismissed.

B. Ticer

Appellant alleges that Ticer caused a temporary restraining order to be issued under Texas Government Code § 81.102(a) in violation of his constitutional rights. Appellant also asserts that Ticer had the state district court issue a temporary injunction without giving him notice. Finally, Appellant alleges that Ticer used his position as legal counsel for the UPLC to attempt to interfere with Appellant's business.

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that prosecutors were absolutely immune from damages claims arising out of their activities. The Court reasoned that the need for absolute immunity arose from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423, 96 S.Ct. at 991. The Supreme Court, applying a functional approach to the scope of immunity, extended absolute immunity to agency officials in the administrative adjudication process. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Section 81.102(a),[6] was "enacted in the interest of public welfare and safety for the purpose of prohibiting the practice of law by unqualified and unlicensed persons under the State's police power." *Palmer v. Unauthorized Practice Comm. of State Bar,* 438 S.W.2d 374 (Tex.Civ.App.1969). Section 81.104 of the Texas Code authorizes the UPLC to file suit to seek the elimination of the unauthorized practice of law. We are persuaded that the duties performed by Ticer are analogous to those of public prosecutors and agency officials in the administrative adjudication process. When Ticer prosecuted the UPLC's action in state court, he was undeniably performing a public service, and accordingly, the Supreme Court's reasoning for the necessity of absolute immunity is equally applicable to Ticer's position. Thus, we hold that Ticer, as legal counsel for the UPLC,[7] is entitled to the protection of absolute immunity. The claims against Ticer in his individual capacity must be dismissed.[8]

C. The Remaining Defendants

The remaining defendants are not state actors. A private party may be held liable under § 1983 if he or she is a "willful participant in joint activity with the state or its agents." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Appellant has failed to aver facts that suggest that an agreement existed among the state and private actors to deprive him

---

[6]Section 81.102(a) provides:

> Except as provided by Subsection (b), a person may not practice law in this state unless the person is a member of the state bar.

[7]That Ticer is a private practice attorney appointed to prosecute this case is irrelevant to our analysis. *See, e.g., Hollowell v. Gravett,* 703 F.Supp. 761 (E.D.Ark.1988) (holding that a private practice attorney retained to prosecute civil service disciplinary proceeding was entitled to absolute prosecutorial immunity); *Voytko v. Ramada Inn of Atlantic City,* 445 F.Supp. 315 (D.N.J.1978) (private practice attorney appointed to prosecute a case is entitled to absolute immunity).

[8]Appellant also alleges that Ticer violated § 1985(3) by attempting to interfere with Appellant's business. Appellant does not allege, however, that Ticer's actions were motivated solely by Appellant's race. Thus, Appellant fails to assert an essential element of a § 1985(3) claim. *See Slavin v. Curry,* 574 F.2d 1256, 1262 (5th Cir.1978), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978), *overruled on other grounds, Sparks v. Duval County Ranch Co.,* 604 F.2d 976 (5th Cir.1979) (en banc), *aff'd* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

of his constitutional rights.[9]

V. *Section 1985 Claims*

A. All Defendants

Appellant alleges a claim under 42 U.S.C. § 1985(3) against all defendants. To state a claim under § 1985(3), Appellant must allege that two or more persons conspired to directly, or indirectly, deprive him of the equal protection of the laws or equal privileges and immunities under the laws. Again, Appellant has failed to allege facts that suggest an agreement among the parties. The only connection among the parties is their participation in the state court proceedings. These facts are insufficient to establish an agreement to commit a deprivation of Appellant's equal protection of the laws and equal privileges and immunities under the laws in violation of § 1985(3).

B. State Farm

Appellant's § 1985 claim against State Farm arises from a different set of facts from his other federal claims. On January 30, 1991, Appellant was operating a motor vehicle in Dallas County, Texas when a vehicle driven by a person insured by State Farm struck him and several other vehicles. Appellant presented a claim for his damages to State Farm and was denied coverage. Appellant alleges that State Farm refused to honor his claim solely on the basis of race in violation of 42 U.S.C. § 1985(3). Appellant's claim is asserted only against State Farm for denying his accident claim. Appellant has failed to plead an essential ingredient of a § 1985(3) claim—participation by two or more persons. Accordingly, we must dismiss Appellant's claim against State Farm under § 1985(3).

VI. *Additional Claims*

Appellant's remaining claims include a constitutional challenge to § 81.101 and a claim under 42 U.S.C. § 1986 against James Blume. Appellant argues that the district court failed to address these issues. Appellant's only reference to these arguments is in his summary of the argument section.

---

[9]Green makes much of a meeting held by the UPLC in which sixteen non-minority attorneys, one African-American believed to be an attorney and one Hispanic lady believed to be a representative of State Farm attended. Green alleges that the African-American attorney left the meeting shortly after it began. Other than the State Farm representative, none of the other participants are identified. For us to find that these facts alone are sufficient to establish a claim of conspiracy to deprive Appellant of his civil rights belies the definition of "inference."

A party who inadequately briefs an issue is considered to have abandoned the claim. *Marple v. Kurzweg,* 902 F.2d 397, 399 n. 2 (5th Cir.1990). Accordingly, we need not address these issues.[10]

CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Appellant's claims under Rule 12(b)(6).

AFFIRMED.

---

[10]Appellant also asserts a vague claim for violation of Art. 21.21 of the Texas Insurance Code. It too is inadequately briefed. *See* Appellant's Brief pp. 3, 7, 12 and 13.