950 F.Supp. 262 (1996)
Demetrius MONSON, Plaintiff,
v.
John MULLIGAN, Defendant.
No. 4:95 CV 325 DDN.
United States District Court, E.D. Missouri, Eastern Division.
September 26, 1996.
*263 Frank A. Anzalone, Anzalone and Fiser, St. Louis, MO, Thomas C. Antoniou, Goffstein and Antoniou, St. Louis, MO, for plaintiff.
Peter J. Dunne, Rabbitt and Pitzer, St. Louis, MO, for defendant.

OPINION
NOCE, United States Magistrate Judge.
This action is before the court following a non-jury trial, held on February 1 and March 25, 1996. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c)(3).
Plaintiff Demetrius Monson has brought this action for relief under 42 U.S.C. § 1983 against defendant John Mulligan. Plaintiff seeks substantial monetary damages and equitable relief for alleged violations of his federal rights. Plaintiff alleges that defendant Mulligan, employed as a city attorney for the City of University City, Missouri, unlawfully directed a city police officer to refrain from returning to him the sum of approximately $12,500, which plaintiff alleges had been unlawfully seized by the police from his home. Defendant Mulligan denies the plaintiff's allegations and asserts the defenses of prosecutorial immunity and qualified immunity of public officials.
From the evidence adduced during the non-jury trial of this action, the court makes the following findings of fact and conclusions of law, required by Rule 52(a), Federal Rules of Civil Procedure:

FACTS
1. On July 18, 1994, city police officers of University City, Missouri, were dispatched to the home of plaintiff Demetrius Monson, located at 7535 Milan. The police had received a report that Monson had been shot there. Two persons had forced their way into 7535 Milan and shot Monson. The police found Monson wounded in his sleeping area in the basement of the residence. An ambulance was requested and Monson was taken to an area hospital.
2. Also residing at 7535 Milan were plaintiff's mother, Lilly Monson Jones, plaintiff's stepfather, Clyde Jones, Charity Jones, and Darrick Monson, plaintiff's brother. Darrick also slept in a portion of the basement which was separated from Demetrius's portion by a sheet hung from the ceiling; the other residents slept in rooms on the first floor.
3. While the officers were in the basement, Officer Glenn Duncan attempted to retrieve a firearm which had been on a ledge of the nearby furnace and which had been knocked off the ledge into the furnace interior. In order to find the firearm, Officer Duncan removed the furnace filter, removed a cover, and reached into the vent area of the furnace. While reaching into the furnace for the firearm, Officer Duncan found a large, *264 brown plastic bag which contained a large amount of cash. Inside the bag the officers found and immediately twice counted $10,500 in currency. The money was seized pending further investigation. No permission to seize the money was sought or received from any occupant of the residence. The $10,500 was turned over to Police Captain Samuel Wilcox.
4. Police Officers Timothy Hepler and Glickard were detailed to investigate the shooting of Monson and they questioned him about the matter on July 19, while he was still hospitalized, medicated, and in intensive care. During this questioning, Officer Hepler asked Monson about the two men who shot him. Monson said that the intruders had shot him when he told them he had no money for them to take. Officer Glickard asked Monson whether he had had any money in the house. Monson answered that he may have had a couple of thousand dollars. Monson did not tell the officers where the money was located.
5. On July 21, 1994, Police Detective Tyron Thompson interviewed Darrick Monson about the money. Darrick said he did not know the location of the money, but that $8,000 of it belonged to him.
6. On July 22, 1994, the Prosecuting Attorney of St. Louis County began a civil action against Demetrius Monson, in Cause No. 665623, in the Circuit Court of St. Louis County, for the civil forfeiture, under the Missouri state Criminal Activity Forfeiture Act (CAFA), Rev.Stat.Mo. §§ 513.607 et seq. (1993 Supp.), of the $10,500 seized from 7535 Milan on July 18. The petition alleged that the money had been used or was intended to be used by Monson in the course of criminal activity. On August 11, 1994, Monson filed his answer to the forfeiture petition; the answer denied the allegations of criminal activity.
7. Also on July 22, 1994, the Prosecuting Attorney commenced another civil action, Cause No. 665624, in the state court against Demetrius Monson. The action sought the transfer of the $10,500 under CAFA to the custody of a federal agency for federal forfeiture proceedings. This petition alleged that, when the police investigated the Monson shooting on July 18, 1994, the officers seized marijuana, a firearm, and the $10,500. In response to the petition, Demetrius Monson filed an objection to the transfer. This objection denied any criminal activity and alleged the seized moneys, $12,500 in amount, were the proceeds of social security benefits. On August 23, 1994, upon motion of the Prosecuting Attorney's Office, Cause No. 665624 was dismissed.
8. On October 12, 1994, the St. Louis County Prosecutor's Office declined to prosecute Monson criminally relating to his possession of the seized currency.
9. On January 19, 1995, the Prosecuting Attorney's Office dismissed Cause No. 665623 without prejudice because criminal charges had been refused. On January 19, 1995, following the dismissal of Cause No. 665623, the Prosecuting Attorney's Office sent a letter to the University City Police Department. In that letter, the police department was informed that no forfeiture of the $10,500 would be sought, because there was to be no prosecution of the matter. The letter stated that the money should be returned to its owner, unless there was another basis for keeping it in custody.
10. Thereafter, counsel for plaintiff telephoned University City Police Captain Samuel Wilcox about the release of the seized money. Wilcox told counsel he would have to consult with the city prosecutor.
11. At the request of counsel for Demetrius Monson, Assistant Prosecuting Attorney Richard Harper had a telephone conversation with Captain Wilcox. Harper told Wilcox about the dismissal of the forfeiture proceedings and advised him to return the money.
12. Thereafter, within the month of January 1995, counsel for Demetrius Monson spoke by telephone with Capt. Wilcox who advised counsel that he would not release the seized currency without the approval of University City city attorney John Mulligan. Wilcox told plaintiff's counsel that there was a problem with the ownership of the money and that he would not release the money without a court order in a replevin action.
*265 13. Defendant John Mulligan is an attorney, licensed by the State of Missouri. Mulligan has a private practice of law and is retained on a part-time basis by the City of University City as the city's Municipal Prosecutor; in this position, he enforces only city ordinances. Mulligan is employed by the City of University City also as one of several attorneys employed as a "city attorney" to provide legal advice to the city on a case-by-case, hourly billing basis. The City of University City does not have a legal department staffed by employed legal counsel.
14. Neither attorney Mulligan, as Municipal Prosecutor, nor the City of University City prosecuted Demetrius Monson for any violation of law relating to the July 18, 1994, seizure of the money.
15. In early 1995, both Capt. Wilcox and Monson's attorney contacted Mulligan regarding the currency seized from Monson's residence. In their first conversation about the matter, Mulligan told plaintiff's counsel that he did not know about the matter and that he would look into it. Several days later, plaintiff's counsel again telephoned Mulligan. Mulligan told counsel that there was more than one person who lived in the residence, that the city was concerned about competing claims to the money, and that the city was concerned about liability for wrongful payment of the money. He stated that the money should be returned to the true owner or owners. Mulligan suggested that Monson commence a replevin judicial action for the money so that a court can determine the proper disposition of the money. Mulligan advised plaintiff's counsel that the city would release the money to the persons determined by the court to be the rightful owner or owners. Plaintiff's counsel stated that he had a Missouri state court opinion which indicated that possession of such property was prima facie evidence of true ownership and that any claimant would have the burden of proving ownership. Plaintiff's counsel then offered to obtain affidavits from the other residents of 7535 Milan; he asked Mulligan whether that would be helpful. Mulligan said that such would be helpful and that counsel should send him a copy of the case to which he referred. Attorney Mulligan never stated he would approve the release of the money to plaintiff if he received the affidavits.
16. Thereafter, Mulligan received a letter, dated January 31, 1995, from Monson's counsel. The letter stated:
Enclosed please find the following items which I believe should be dispositive of the issues we discussed regarding the money currently being held in University City:
a) Affidavit of Lilly Jones, Clyde Jones and Darrick Monson relinquishing any claims to all sums of money to my client Demetrius Monson;
b) a copy of the case in State v. Patchen, 652 S.W.2d 265 which clearly states the law in Missouri regarding these items.
In light of the foregoing we will regard any continued conversion of this money by the police department to be evidence of bad faith establishing justification for an award of punitive damages.
See Pl.Exh. 3. Attached to the letter was one written affidavit, signed by Lilly Monson Jones, Clyde Jones, and Darrick Monson. The affidavit stated that they and plaintiff were the only residents of 7535 Milan on July 18, 1994; that all three thereby surrender any claim to the seized money and authorize the University City police department to return the money to Demetrius or his counsel; and that all three would hold the University City Police Department harmless from any liability regarding the transfer of the money to Demetrius Monson. Pl.Exh. 3. Also attached to the letter was a photocopy of the opinion referenced by plaintiff's counsel, State v. Patchen, 652 S.W.2d 265 (Mo.Ct.App. 1983).
17. Thereafter, plaintiff's counsel telephoned Mulligan and confirmed that he had received the letter and the affidavit. Mulligan also told plaintiff's counsel that he believed the seized moneys were the proceeds of unlawful drug trafficking. They disputed the entitlement to the money and Mulligan said he would not return the money without a replevin lawsuit being filed.
18. The next day, plaintiff's counsel telephoned Capt. Wilcox and told him of the conversation with Mulligan; plaintiff's counsel *266 then asked for the return of the money. Again, Capt. Wilcox stated he would not return the money without the approval of attorney Mulligan.
19. In considering the matter of the return of the seized money, in communicating with city personnel, and in communicating with plaintiff's counsel, Mulligan was performing legal services for the City of University City, for which he has been compensated by the city. The city did not delegate to Mulligan the duty of deciding how the seized currency should be disposed of.
20. During the trial of this action, Demetrius Monson testified that some of the money found in the furnace belonged to him and some of it belonged to his brother, Darrick. Plaintiff has no written record of the exact amount of the money kept in the basement.
21. Plaintiff has not commenced a replevin action or any judicial action, other than this federal action, to determine his entitlement to the seized money because plaintiff did not wish to pay the expenses of such litigation.
22. On March 6, 1995, University City Police Detective William Anderson spoke with plaintiff Demetrius Monson regarding the seizure of the money from plaintiff's residence on July 18, 1994. At that time Det. Anderson was booking plaintiff following his arrest in an investigation of unlawful drug trafficking. During this conversation, plaintiff stated that he was a drug dealer and that the moneys seized from his residence when he was shot were the proceeds of selling large quantities of marijuana.

DISCUSSION
Plaintiff claims defendant is liable under 42 U.S.C. § 1983 for a violation of his federal rights, by acting beyond the scope of his authority to direct the police not to return the money to plaintiff and by refusing to authorize the release of the money to plaintiff after receiving the affidavit of potential claimants and a statement of legal authority for the return of the money. The court has subject matter jurisdiction over the action, as granted by 28 U.S.C. § 1343(3).
Entitlement to relief under § 1983 requires that plaintiff prove that defendant Mulligan deprived him of a federal right and that Mulligan acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980). Plaintiff alleges that defendant violated his rights under the Fourth, Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States, and under 42 U.S.C. §§ 1981, 1985(2) and (3), 1986, and 1988. The facts set forth above establish that plaintiff has not borne his burden of proving any violation of federal law by defendant.
Plaintiff's invocation of the Fourth Amendment, the Thirteenth Amendment, § 1981, and § 1985 are not relevant to this action, because it is uncontested that defendant Mulligan had no involvement in the seizure of the money by the police from 7535 Milan on July 18, 1994; because this case involves no allegations of obstruction of justice; and because no evidence indicated that anyone involved in the facts of this dispute acted out of racial or other class-based animus. Forbes v. Arkansas Educational Television Communication Network Foundation, 22 F.3d 1423, 1428 (8th Cir.1994), cert. denied, ___ U.S. ____, 115 S.Ct. 1962, 131 L.Ed.2d 853 (1995) (racial motivation is a prerequisite to suit under § 1981); Green v. State Bar of Texas, 27 F.3d 1083, 1088 n. 8 (5th Cir.1994). Without a violation of § 1985, § 1986 provides no remedy. Litz v. City of Allentown, 896 F.Supp. 1401, 1414 n. 16 (E.D.Pa.1995). Section 1988 merely complements other federal civil rights acts; it provides no independent basis for a cause of action. Moor v. Alameda County, 411 U.S. 693, 710 n. 26, 93 S.Ct. 1785, 1796 n. 26, 36 L.Ed.2d 596 (1973).
The facts of this case, set forth above, establish that plaintiff Monson has been deprived of no federal right, constitutional or otherwise, by defendant Mulligan. Whether or not the money was lawfully seized from 7535 Milan by the University City police is not an issue before this court, because it is undisputed that defendant Mulligan had no involvement in the decision of the police to seize the money.
*267 Plaintiff alleges that, after the Prosecuting Attorney of St. Louis County determined not to seek judicial forfeiture of the money or a transfer of the money to federal control for forfeiture proceedings, and after no criminal charges were brought against plaintiff regarding this money, defendant Mulligan was obligated to not unlawfully interfere with the lawful return of the seized money to plaintiff. The facts of this case establish that defendant Mulligan did not unlawfully interfere with any right of plaintiff to the seized money.[1]
The Due Process Clause of the Fifth Amendment is not violated by a requirement that a claimant to governmentally seized property file a claim for the property according to a non-onerous, legally prescribed procedure. Johns v. McKinley, 753 F.2d 1195, 1200-01 (2d Cir.1985). Plaintiff has refused to commence a replevin action[2] in state court for the return of the money, as suggested by defendant Mulligan. Such an action might have resulted in a court judgment for the return of the money to plaintiff, especially upon plaintiff's marshaling the type of evidence that was shown by affidavit to defendant Mulligan. State v. Patchen, 652 S.W.2d 265 (Mo.Ct.App.1983). In Patchen, which plaintiff's counsel cited to defendant Mulligan, the court held that possession and control of personal property establishes a prima facie case of ownership in the property; any other, non-possessory claimant must overcome this presumption of ownership in the possessor and prove by a preponderance of the evidence that he has ownership rights in the property superior to the possessor. 652 S.W.2d at 267-68. See also Foltz v. Pipes, 800 S.W.2d 14, 15 (Mo.Ct.App.1990).
Defendant Mulligan's refusal to return the money to plaintiff without a court order to do so, apart from not violating any federal right of Monson to the return of the seized money, was consistent with good judgment and state law. A person other than an occupant of 7535 Milan, including plaintiff, might have claimed ownership of the more than $10,000 which was seized and might have overcome the presumption of title in the possessor or joint possessors. Cf., State v. Patchen, 652 S.W.2d 265 (Mo.Ct.App.1983). Had the money been returned to plaintiff as requested, University City might have become liable for wrongful release of the money to plaintiff, as defendant expressed to plaintiff's counsel.[3] Further, Missouri statutory law prescribes a procedure for the recovery of such money. Section 542.301, RSMo, requires that property seized by a law enforcement officer shall be disposed of according to the statute, e.g., by a claimant making a written motion for its return in the appropriate court. See Mo. Rev.Stat. § 542.301.1(2) (1993 Supp.). Thus, defendant Mulligan acted lawfully by requiring court approval for the return of the seized money to plaintiff. Any insufficient reason of defendant Mulligan or of the city for not returning the money to plaintiff could have been litigated and decided in the appropriate forum.
This court having determined that defendant Mulligan did not violate any federal right of plaintiff, it becomes unnecessary for the court to decide whether defendant acted under color of state law, or to decide the affirmative defenses of absolute or qualified immunity asserted by defendant. Cf., Gomez v. Toledo, 446 U.S. at 640, 100 S.Ct. at 1923-24.
Judgment will be entered for defendant.
NOTES
[1] In deciding this action, it is unnecessary for the court to decide whether or not plaintiff Monson is entitled to the seized money and the court makes no such determination. At issue is whether or not defendant Mulligan unlawfully interfered with any ownership interest of Monson.
[2] It may be that an action for the return of the seized money under Missouri Revised Statute § 542.301 would have been a more appropriate action under Missouri law than a replevin action. Mo.S.Ct.R. 99; Goth v. Norman, 693 S.W.2d 175, 177 n. 1 (Mo.Ct.App.1985).
[3] The possibility of such liability was also indicated by the hold-harmless provision of the affidavit attached to counsel's letter of January 31, 1995. Pl.Exh. 3.