**GUIDRY, et al**

v.

**PELLERIN LIFE INS CO., et al**

**No. CIV.A. 02–253.**

United States District Court, W.D. Louisiana. Lafayette–Opelousas Division.

March 29, 2005.

Robert J Diliberto, Murray Law Firm, New Orleans, LA, Bob Forrest Wright, Donald R Cravins, Jr, James Parkerson Roy, Domengeaux Wright et al, Lafayette, LA, Stephen B Murray, Murray Law Firm, New Orleans, LA, for Carson Guidry, Shirley Mae Guidry, Carson Mark Guidry, Plaintiffs.

Jude C Bursavich, Breazeale Sachse & Wilson, Christine Lipsey, Breazeale Sachse & Wilson, Michael Paul Fruge, Breazeale Sachse & Wilson (Baton Rouge), Van R Mayhall, Jr, Breazeale Sachse & Wilson, Baton Rouge, LA, Bernard E Boudreaux, Jr, Baton Rouge, LA, for Pellerin Life Insurance Co Inc, Defendant.

Virginia G Benoist, LA Commissioner of Insurance, Baton Rouge, for LA Commissioner of Insurance, Movant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

MELANCON, District Judge.

Before the Court is a Motion for Summary Judgment filed by defendant Pellerin Life Insurance Company. *R. 39.* For the reasons that will follow in due course, defendant's motion will be granted dismissing all of plaintiff's claims with prejudice.

The Court's announced ruling to grant defendant's motion and to dismiss plaintiffs' claims that defendant knowingly, intentionally and as a matter of corporate policy, practice and/or common course of conduct systematically charged minorities more for its policies than it charged similarly situated Caucasians, may seem at first blush, counterintuitive. After all, we in the United States in the year 2005 still live in the wake of Slavery. Many of us, blacks and whites are old enough to have lived through Jim Crow. All of us realize, or should realize, that prejudice still exists in our Country. And defendant did charge African–Americans as a class, higher premiums than it did Caucasians as a class, for the same life insurance coverage.

In the case at bar, two things must be remembered. First, the nature of insurance and second, the requisite showing that a plaintiff must make to withstand summary judgment in a claim brought under 42 U.S.C. §§ 1981 and 1982.

Insurance is the acceptance of a known risk for a sum certain. Insurance has been defined as:

"[M]ethod by which large groups of individuals equalize the burden of financial loss from death by distributing funds to the beneficiaries of those who die."
*Encyclopedia Britannica,* 2005;

"[A] system under which the insurer, for a consideration usually agreed upon in advance, promises to reimburse the insured or to render services to the insured in the event that certain accidental occurrences result in losses during a given period. It is thus a method of coping with risk."
*Encyclopedia Britannica,* 2005;

"[A] formal social device for reducing risk by transferring the risks of several individual entities to an insurer."
New York Life Insurance Quotes Company, *Glossary of Terms Used by New York Life Insurance Companies* (March 29, 2005), *available at* http:/www.new-york-life -insurance-quotes-company.com/glossary.html

In a claim under 42 U.S.C. §§ 1981 and 1982, a plaintiff must show, among other things that are not in dispute in this action, that there was an intent by the defendant to discriminate on the basis of race or intentional discrimination based on

race. As the attorneys for the parties candidly admitted at oral argument on January 4, 2005, in analyzing a claim of discrimination under §§ 1981 and 1982, a court must go through the three tier burden-shifting analysis set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

For the reasons set out hereinafter, despite the fact that African–Americans were charged higher premiums by defendant than were Caucasians for the same life insurance coverage, plaintiffs have failed to meet their burden of persuasion. The record before the Court does establish conclusively that defendant's differential in the pricing of premiums for life insurance between African–American and Caucasians was based on *risk, not race.* In that regard, the known risk assumed by defendant for a sum certain as it related to insuring the lives of African–Americans and Caucasians was akin to an insurer charging a lower premium to a female than to a male and a higher premium to a smoker than a non-smoker.

It is left to another day... and ... to another forum to answer the most troubling question of why it is, after three hundred eighty-six years in North America and one hundred forty-two years after the end of Slavery, African–Americans continue to die prematurely when compared to Caucasians.

### Background

This action was filed by plaintiffs Carson Guidry, Shirley Mae Guidry and Carson M. Guidry on February 8, 2002. Plaintiffs filed their claims individually and as a class action on behalf of "African–American persons and all other racial, national origin or ethnic minorities" against Pellerin Life Insurance Company, Inc., alleging racial discrimination in violation of 42 U.S.C. §§ 1981 and 1982, relating to the sale and administration of life insurance policies. Plaintiff's Complaint, ¶ 2. Specifically, plaintiffs allege Pellerin "knowingly, intentionally, and as a matter of corporate policy, practice and/or common course of conduct" "systematically charged minorities more for its Policies than it charged similarly situated Caucasians." *Id.* at ¶ 9. Plaintiffs further allege that "[a]fter Pellerin stopped selling Policies using explicit race-based criteria, it implemented a variety of covert practices ... permitting it to continue to confine minorities to its higher-priced, inferior policies." *Id.* at ¶ 10. Plaintiffs contend that "Pellerin continues to discriminate, by continuing to charge minorities more for their Policies than Pellerin charges to similarly situated Caucasians, and by maintaining in-force Policies designed for and/or sold to minorities that are inferior to other policies offered by Pellerin." *Id.* at ¶ 11.

On April 4, 2003, plaintiffs filed a motion for class certification. *R. 27.* Following the filing of its opposition to the motion for class certification on May 20, 2003, Pellerin filed the instant motion for summary judgment on July 15, 2003. *R. 39.* Plaintiffs filed an opposition to Pellerin's motion on July 29. *R. 44.* The Court set both motions on oral argument on August 16, 2003. At the hearing, the attorneys for the parties informed the Court of a pending Fifth Circuit *en banc* hearing in *In re: Industrial Life Insurance Litigation,* which would impact the plaintiffs' motion for class certification because of similar issues. Based on the attorneys' representations, the Court administratively terminated this action and instructed the attorneys to file a joint motion to reopen the proceedings within 20 days of the Fifth Circuit's *en banc* ruling. *R. 51.* On April 30, 2004, the Court granted the parties' joint motion to reopen the case and a scheduling order was issued. *R. 54; 55.* Following requests by the parties to reset the hearing on the motion to certify and the motion for summary judgment, the Court conducted

oral argument on the motions on January 4, 2005. *R. 72.* At the hearing, the Court deferred ruling on plaintiffs' motion for class certification pending its ruling on defendant's motion for summary judgment. The Court ordered the parties to file supplemental briefs on the motion for summary judgment. The parties' supplemental memoranda are currently before the Court. *R. 75; 76.*

### Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's claim. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Little,* 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judg-

ment prayed for. Fed. R. Civ. Proc. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Id.*

### Analysis

Pellerin moves for summary judgment on all of plaintiffs' claims. Plaintiffs assert claims pursuant to 42 U.S.C. §§ 1981 and 1982, seeking "redress for a nationwide scheme of racial discrimination by Pellerin relating to the sale and administration of life insurance [p]olicies." Plaintiffs' Complaint, ¶ 1. Because of the historic interrelationship between §§ 1981 and 1982, courts have consistently construed them together. *See Tillman v. Wheaton–Haven Recreation Association,* 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). When analyzing a claim of discrimination under §§ 1981 and 1982, a court must go through the three tier burden-shifting analysis set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 354 (5th Cir.2001). If established, the plaintiff's prima facie case raises an inference of intentional discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The burden then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Pratt v. City of Houston,* 247 F.3d 601, 605 n. 1 (5th Cir.2001). "[The defendant] may sustain this burden by introducing admissible evidence of an explanation that would be 'legally sufficient to justify a judgment for the defendant.'" *Guthrie v.*

*Tifco, Indus.*, 941 F.2d 374, 376 (5th Cir.1991)(quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the defendant articulates such a reason, the focus then shifts to the ultimate question: whether the plaintiff can prove that the defendant intentionally discriminated against the plaintiff based on his race. *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089. The plaintiff may attempt to overcome the defendant's proffered nondiscriminatory reason by providing evidence that the defendant's legitimate, nondiscriminatory reason is merely pretextual. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff, therefore, "retains the ultimate burden of persuasion throughout the case." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir.1997) (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). A plaintiff can meet his burden of demonstrating pretext and thereby establish a jury issue to avoid summary judgment "if the evidence taken as a whole (1) creates a fact issue as to whether each of the [defendant's] stated reasons was what actually motivated the [defendant] and (2) creates a reasonable inference that [the plaintiff's protected status] was a determinative factor in the actions of which plaintiff complains." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374, n. 23 (5th Cir.2000) (explaining that this analysis first formulated in *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996), survives the Supreme Court's abrogation of *Rhodes* in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). A prima facie case and sufficient evidence of pretext would permit a court or jury to find unlawful discrimination, without additional independent evidence of discrimination, though such a showing will not always be adequate to sustain a jury's finding of liability.

*See Reeves*, 530 U.S. at 142–49, 120 S.Ct. 2097.

Section 1981, which prohibits racial discrimination in the making and enforcement of contracts and property transactions, provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

To survive a summary judgment motion on their § 1981 claim, plaintiffs must establish, by a preponderance of the evidence, a prima facie case of intentional discrimination based on race. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir.2004). To establish an inference of discrimination under § 1981, consistent with *McDonnell Douglas*, plaintiffs must allege facts in support of the following elements: (1) the plaintiffs are members of a racial minority; (2) an intent to discriminate *on the basis of race* by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994). The statutory "enumerated activity" implicated in this case is the right to "make and enforce contracts," and more specifically here, the administration and collection of insurance premiums based on racially discriminatory pricing. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir.1997) (citing *Green*, 27 F.3d at 1086 (5th Cir.1994)).

Section 1982, which prohibits racial discrimination in transactions relating to real and personal property, provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

In order to bring an action under § 1982, a plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of the following: (1) the defendant's racial animus; (2) *intentional discrimination;* and (3) that the defendant deprived plaintiff of his rights because of race. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616–17, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987).

A § 1981 plaintiff must show purposeful discrimination based on race in order to prove a *prima facie* case of discrimination. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). A showing of disparate impact is insufficient to sustain a cause of action under § 1981. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). "It is relatively easy both for a plaintiff to establish a prima facie case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision." *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir.1992). "In the context of summary judgment ..., *the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.*" *Id.* (emphasis added).

█ In this case, there is no dispute as to the first and third prongs required by plaintiffs to establish a prima facie case under § 1981 or § 1982. It is undisputed that plaintiffs are members of a racial minority, African–Americans, and that the complained of discrimination concerns activities addressed in § 1981 and/or § 1982.

Disputed is the second prong of the test, whether Pellerin intended to discriminate against the plaintiffs on the basis of their race. For purposes of this ruling only, the Court will assume *arguendo* that plaintiffs have established a prima facie case of discrimination. Because Pellerin has articulated a legitimate, non-discriminatory reason for the dual-pricing of its policies, i.e. actuarial tables of the same vintage for African–Americans and Caucasians, the burden shifts back to plaintiffs to show that, or at least raise a fact issue as to whether, the reason proffered by Pellerin is merely a pretext for discrimination. The Court finds that plaintiffs are unable to meet their burden on either.

In their supplemental memorandum in opposition to Pellerin's motion, plaintiffs assert that they have provided evidentiary support for their allegations of intentional discrimination primarily in the form of the report prepared by their expert, Johan L. Lotter. Plaintiffs contend that Lotter opined that the use of dual rates for African–Americans and Caucasians was not actuarially justified even if census data showed differences in mortality rates. Plaintiffs further assert that the Court should look to the recent case of *Brown v. American Capital Insurance Company*, Civil Action No. 01–2079, 2004 WL 2375796 (E.D.La. Oct. 21, 2004), as the facts and the expert testimony in the instant action are almost identical to the facts and expert testimony in *Brown*. Finally, plaintiffs assert that the affidavit of James J. Donelon, Louisiana's Chief Deputy Commissioner of Insurance, states that race-based premiums since the enactment of La. R.S. 22:1214 in 1958 would be considered unfair discrimination. La R.S. 22:1214(7) lists "Unfair discrimination" in the business of insurance, as follows:

(7) Unfair discrimination. (a) Making or permitting any unfair discrimination between individuals of the same class and

equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract, *provided that, in determining the class, consideration may be given to the nature of the risk, plan of insurance, the actual or expected expense of conducting the business or any other relevant factor....* (emphasis added).

La R.S. 22:1214(7)(a).

Defendant disputes that plaintiffs have provided evidentiary support for their allegations of discrimination. In its supplemental memorandum defendant argues that Lotter's report was expressly confined to only explaining methods of restitution, and was based on the assumption that there was discriminatory conduct. The pertinent portion of Lotter's report provides as follows:

"I have been retained to describe and explain suitable methods of objectively computing restitution that should be made to a plaintiff class composed of African–American current and former policy holders of Pellerin Life Insurance Company, Inc. who allegedly were sold Life and Accident and Health Insurance on a racially discriminatory basis. Such restitution is intended to restore plaintiffs to an economic position they would have occupied absent the alleged discriminatory conduct by Pellerin."

Lotter Report.

Upon review of the report rendered by plaintiff's expert, Johan L. Lotter, the Court agrees that Lotter does not provide competent evidentiary support for plaintiffs' allegations of intentional discrimination.

Defendant further argues that the *Brown* case is distinguishable from the case at bar in that the plaintiffs' expert and the defendant's expert in *Brown* "of-

fered conflicting expert testimony as to the historical rationale for developing the mortality table at issue and its import with respect to premiums collected from 'substandard' policyholders." Finally, defendant maintains that Pellerin never unfairly discriminated "between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance" as required under 22:1214.

The Court agrees that *Brown* is distinguishable from the case at bar. While the expert testimony related to the evidence adduced in *Brown* created a genuine issue of material fact, plaintiffs in this case have failed to introduce any evidence that suggests that the basis of dual-pricing was based on *anything other than life expectancy.* Rather, and contrary to plaintiffs' contentions, defendant's expert, Ernest Huval, opined:

8. "Based upon my analysis of the 1952 Society of Actuaries paper, the 1965 Society of Actuaries paper and the 1961–1998 U.S. population data, it is my opinion that this objectively determined information demonstrates, with a high degree of certainty, that non-white mortality rates are significantly higher than white mortality rates."

Huval Report.

Also, in his deposition as the representative of Pellerin Life, Frank Pellerin testified that race was not used in setting an insured's premium, but rather was used only to determine risk. Pellerin Depo., p. 34. Because that risk was reflected in the premium paid under some Pellerin policies, African–Americans paid a higher premium than Caucasians for the same coverage under those policies. *Id.*

Plaintiffs base their contention that Pellerin's practices violated Louisiana's anti-discrimination law, La. R.S. 22:1214, on the May 30, 2003 affidavit of James J. Donelon, Louisiana's Chief Deputy Com-

missioner of Insurance. 5/30/03 Aff. of Donelon. In his later affidavit dated June 11, 2003, however, Donelon specifically stated that the Louisiana Department of Insurance has no information or evidence that Pellerin ever utilized anything other than life expectancy to determine risk in the sale of insurance products. 6/11/03 Aff. of Donelon. Donelon further stated in the later affidavit that after the passage of 22:652 [1], an insurer charging "different groups of people different premium amounts because of differing risk determined by life expectancy, would not violate rules and/or regulations of the Louisiana Department of Insurance or Louisiana statutory law." *Id.* Donelon also noted that, "[f]or some life insurance products, up until April 1, 1982, Louisiana law mandated the use of separate published rates for whites and African–Americans." *Id.* This evidence, as well as Ernest Huval's report and Frank Pellerin's sworn testimony, specifically contradicts plaintiffs' allegations of intentional discrimination on the part of Pellerin.

"[I]n the third stage of the burden-shifting framework, the plaintiff is given a 'full and fair opportunity to demonstrate' that the defendant's proffered reason is not true, but instead is a pretext for intentional discrimination. On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Federal Exp. Corp.,* 283 F.3d 715, 720 (5th Cir.2002)(internal citations omitted). In this case, plaintiffs' opposition to summary judgment is devoid of even a supçon of evidence that the subject insurance policies Pellerin issued were priced in a *racially* discriminatory manner or that any of Pellerin's actions were *racially* motivated.

*IV. Conclusion*

As plaintiffs have offered absolutely no competent summary judgment evidence that Pellerin's rationale for dual-pricing with regard to premiums collected from "substandard" policy holders was intended to discriminate on the basis or race or intentional discrimination based on race, plaintiffs have failed to rebut the legitimate, non-discriminatory reason given by Pellerin, that its actions were based on risk. Therefore, plaintiffs' claims under sections 1981 and 1982 must fail. As plaintiffs have failed to establish the existence of a genuine issue of material fact in response to Pellerin's motion, the Court will grant the motion for summary judgment and dismiss plaintiffs' claims against Pellerin in their entirety with prejudice.

**JUDGMENT**

In accordance with the Ruling issued on this date,

IT IS ORDERED that Pellerin Life Insurance Company's motion for summary judgment [Rec. Doc. 39] is GRANTED and plaintiffs' action is DISMISSED WITH PREJUDICE.

---

1. La. R.S. § 652. Discrimination prohibited, provides:

No insurer shall make or permit any unfair discrimination in favor of particular individuals or persons, or between insureds or subjects of insurance *having substantially like insuring risk, and exposure factors, or expense elements,* in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or in the benefits payable or in any other rights or privileges accruing thereunder. *This provision shall not prohibit fair discrimination by a life insurer as between individuals having unequal life expectancies.* (Emphasis added).